All right, I think we're ready. So, Ms. Dressner, I believe that you are going first on behalf of Appellant Mr. Clay. Yes, good morning. I'm Tracy Dressner for Petitioner Eric Clay. As the court knows, there was a lot to cover in this briefing, and I'm happy to answer questions on any issues, but my intent is to focus my argument today on the prosecution's presentation of the crime data analysis because I believe that really was central to the entire case. There is ample reason for this court to allow Mr. Clay to have that claim, confrontation clause claim, decided on the merits in federal court. The state court's finding that he forfeited that claim because his attorney raised only a hearsay objection and didn't also cite the Sixth Amendment is simply contrary to what the law says in California. The California Supreme Court has said in several cases that as long as an objection fairly informs the court of the related constitutional claim, the grounds aren't forfeited. And that makes sense because the reason for forfeiture is to ensure that the court hasn't been deprived of knowing, of being presented with an issue and having an opportunity to correct it. And here we have a situation where hearsay, the attorney objected several times on hearsay grounds, even had a continuing hearsay objection throughout the presentation of this evidence. And hearsay is a prerequisite to a confrontation clause ground, yet the court repeatedly overruled the hearsay objection. So there's nothing more that counsel could have presented by raising a Sixth Amendment ground, nothing would have changed because the court had already ruled that the prerequisite to that wasn't present. Now we know the state court already ruled the trial court was wrong about that. In fact, there was a hearsay, it was hearsay evidence and it should not have been admissible. I agree with the respondent's contention that generally this court doesn't review state court's application of its procedural rules and that contemporaneous objection is a regularly followed rule in state court. The United States Supreme Court has said there are exceptions to that for exactly this type of situation. And those were the Lee case and the Osborne case that I discussed in the reply brief. And really there, the United States Supreme Court says you have to look at three issues. Would the trial court's ruling have been affected had the additional procedural rule been followed? And we know the answer to that is no, for the reason I just said. The court had already said there was no hearsay, so raising confrontation wouldn't have changed anything. The second issue was whether the state courts require flawless compliance with that procedural rule. Again, we know the California Supreme Court has said in Partita and other cases that are cited in the brief that they only require fairly informing the court of the basis for the objection. And so in Partita, for example, they hadn't said due process, but it said that the evidence was wrongly admitted. And the court said, you know, that's close enough. A due process violation wouldn't have added anything more to that. And the third is whether the objection gave the court the information it needed to reliably rule on the issue. And again, the answer is yes in this case. The counsel raised hearsay repeatedly. The court said no hearsay. In terms of a confrontation clause objection, it already was a no-go from the start because the court said no hearsay. It was only if the court had said yes, there was hearsay, and for some reason still let the evidence in, maybe then we didn't get to the issue. Was it testimonial? Was it, you know, whatever. But we would never have gotten to that point, even if counsel had raised that Sixth Amendment violation. In that situation, and there's no reason not to allow Mr. Clay to have this claim, the confrontation clause claim, ruled on on the merits in federal court. If this court doesn't accept that argument, and I think it's a pretty persuasive argument, given the court's ruling on hearsay, we still have the issue of cause and prejudice. We have the district court found counsel was deficient for failing to raise the issue. Now, the deficiency isn't because the court would have changed the outcome of anything. If counsel had raised that, the same thing would have happened. That evidence would have come in because the court didn't recognize this as hearsay. But what the failure to do deprived Mr. Clay of what he's seeking now, to have this issue decided on the merits in federal court. The district court did find that counsel was deficient. And I'll point out before I go on to prejudice, that respondent noted this catch-22 that counsel was put in. Counsel says, in the district court, recognized that raising a confrontation clause would have been a futile effort because the court had already said no hearsay. But now, we're going to flip that and say, even though it would have been futile, we're going to punish you for not having done that futile act, and you're not going to get to hear your claim heard on the merits. And that just reeks of unfairness. In terms of prejudice, we start with the district court finding that the evidence against Mr. Clay was not overwhelming, and I think that's even an understatement. There was problems all over the place with this case in terms of how the four women identified the man who attacked, the inconsistencies within their own descriptions, and between each other. There are inconsistencies amongst themselves, internally and between the four, in the description of the taxi cab. And we have a situation where all of the evidence against all four women was problematic for all the reasons that are too lengthy to go through in such a short argument, but are well laid out in the brief. And there was nothing unique about any of these cases. There was not a signature event issue that tied these four cases together. But you have this evidence where the prosecution tells the jury right before they go in to deliberate that there were no sexual assaults involving women in the taxi or taxi service in the three and a half years after Mr. Clay's arrest. You could not get anything more solid to say, yes, we know all this evidence is lacking, but you know what, there haven't been any more sexual assaults. And as they said, that points to his guilt. And it's the last thing they hear, just about, I think there's another half a page, before they go into the jury room to deliberate. And when you have a case where there's so much problematic identification evidence, and particularly with Deanne and Laura, which I separately argued was insufficient as a matter of law, even without this inadmissible evidence, there's just certainly a reasonable doubt. There was reasonable doubt that was erased by the prosecution's misuse of this evidence, or this evidence that shouldn't have been admissible. And at least one, I think there's a reasonable probability that at least one, if not all of the jurors would have been persuaded, at least as to Deanne and Laura, and probably as to all four, had that not unifying evidence been presented. Unless there's questions right now, I will reserve the remainder for rebuttal. All right, thank you, counsel. Yes, good morning, Your Honors. May it please the Court. Deputy Attorney General Charles Lee on behalf of Respondent. I'll start with the argument that, well, appellant's argument that the Confrontation Clause claim or objection would have been futile was raised in the California Court of Appeal on direct appeal in a reply brief. And the California Court of Appeal implicitly rejected that argument when it found the Confrontation Clause claim forfeited on appeal. And, you know, as this Court is well aware, State courts, well, California's contemporaneous objection rule has been consistently applied as an independent and adequate ground for imposing procedural bar. And Petitioner can't relitigate the California Court of Appeal's decision, you know, in this Court. As to cause and prejudice, Your Honors, I'll go directly to prejudice under ineffective assistance of counsel for cause and prejudice. And, you know, there are inconsistencies in this case, but I think it's important to take a step back and look at the entire record, which is what the jury did. And we look at the entire record, I think it's clear that the evidence of guilt in this case is actually quite strong. You know, the district court explained that the identifications in this case were either certain or they were corroborated. And I think it's helpful to look at this, look at the evidence, break it down victim by victim. So in the case of Linda M., you know, her identification as a victim of the Petitioner was absolutely certain. She identified him in court from a photo lineup, from a live lineup. And I think, importantly, she gave a description of the suspect that closely matched Petitioner. She said he was six foot tall, stocky, he was a light-skinned black man. He had poofy hair, slanted eyes, broad nose, full lips. And if you look at the picture of Petitioner in the live lineup, that's almost an exact description of him. Lamona, you know, she identified Petitioner in court from a photo lineup, from a live lineup, both by his appearance and his voice. And I think, importantly, the GPS records of the taxi cab on the night of the attack  Now Deanne, I think, is a little bit different, but I think the evidence in that with respect to Deanne is equally strong. Deanne recognized unique bite marks and scars on Petitioner's hands. She pointed out immediately, you know, when she was injured by police. She also pointed out at trial she identified from the photographs the scars and bite marks on Petitioner's hands when she was shown the photographs. And she said those scars and bite marks were unique. They stood out to her, and it caused her concern, because she had never seen something like that on a man's hands. Also, I think, importantly, she described multiple items in the taxi cab that were later found either in Petitioner's home or inside the taxi cab. That included the Michael Jordan jacket, a black stocking cap, body oil, aloe vera oil was later found in the taxi cab, and also fingerless gloves. Now, I think Petitioner would argue that these were ubiquitous items. But when you have them all in combination, I think that's really powerful evidence that she identified the correct person, especially Michael Jordan jacket, which Petitioner himself told her that it was a Michael Jordan jacket. Laura, I think, again, she identified Petitioner in court, and she saw him in the live lineup, she saw him in the photo lineup, and in both cases she narrowed those lineups down to two people, one of which was Petitioner. And, you know, with respect to Laura, I think that's a case where the modus operandi evidence is really important, because her account of the events, her account of the facts, really closely matched the accounts made by the others. And there were compelling similarities between all four attacks. Victims, first of all, were all either prostitutes or women who Petitioner believed were prostitutes. They were at least Linda and Lamona when they were in their 50s and 60s. Deanne, her picture is in the excerpt of records. She appears to be over 50 years old. And they all described, you know, a taxi van with a sliding passenger door and a messy interior with two rows of bench seats. Who picked them up? As for the sequence of events, all four women were picked up in skid row, driven to a secluded location. Linda and Laura were driven to an alley. Lamona was driven behind a dark building. Deanne was driven also to an alleyway. And then in each instance, the Petitioner got out from the taxi cab, went to the back seat, and attacked the women. There was a similar pattern of violence against all four women. All four women testified that their attacker punched them repeatedly in the head. Linda, Lamona, and Deanne testified that the Petitioner or the attacker strangled them during the attack. Laura was an exception because she escaped. The Petitioner was startled by somebody during the attack. And then all four or three of the victims, Linda, Lamona, and Deanne, again, testified that their attacker threatened to kill them if they reported the attack. So I think when you put all this together, you know, first of all, I think it's really strong evidence of modus operandi. But even beyond that, I think more broadly it shows an absence of mistake because Laura's testimony corroborated everybody else's description of the events. It's highly unlikely, and I would say unreasonable, that she was talking about a different taxi cab driver who was also attacking women, you know, in skid row. What's your position on the issue of ineffective assistance of counsel in this case? Ineffective assistance. Failure to make objections and failure to strike a juror. Specifically for the failure to strike a juror, I think counsel could have reasonably believed that, first of all, that the juror was not close friends with the officer in this case, Officer Deanne Joseph. And that's partly because the juror, you know, said he was an acquaintance with Officer Joseph. And he also didn't have the officer's name right. He thought his name was Ted Joseph. Beyond that, I think Officer Joseph's credibility wasn't central to this case. You know, he basically testified to statements made by the victims to him. And some of those statements corroborated the victim's testimony. Some of the statements were inconsistent with the victim's testimony. And the defense theory of the case here was really to push the inconsistencies, to really push for details so that there can be inconsistencies. Because the more inconsistencies there were, the more she could argue that, you know, these victims were unreliable or the identifications were unreliable. So she could have reasonably determined that it would be good to have a juror that found Officer Joseph credible because then they would have found the inconsistencies, you know, in the various accounts credible as well. As for the other claims of ineffective assistance, does Your Honor have any specific questions? No, just I think the other was regarding his failure to file a motion to suppress. Right. So for the failure to file a motion to suppress, I think the identifications here, I think they pertain specifically to Linda and Lamona because those were the two who specifically identified the petitioner. I think the failure was reasonable first because the six-pack photographs were not unduly suggestive in this case. You know, all six photographs were of African-American men about similar ages. And I think the only difference is that the petitioner's photograph is lighter than the other photographs, arguably significantly lighter, but he doesn't stand out in any other way. Besides that, you know, even if for some reason, you know, the identification procedures were somehow unduly suggestive, it would still not be a due process violation because their identifications, specifically Linda and Lamona, were reasonable under the circumstances. Linda because she gave an extremely accurate description of the suspect, and Lamona because, you know, she identified the sound of his voice, and also because her account of a petitioner's movements that night matched the GPS evidence. And unless your honors have any further questions, I would just ask this court to affirm.  Thank you. There was a lot to rebut, just starting with the last two issues. It wasn't just that the photo was lighter. It was that Mr. Clay was the only light-skinned black man in the six-pack photo. And that photo was shown to Lamona and Linda, both who had told the police that it was a light-skinned black man. So when you're presented with six photos and only one light-skinned black man, and you pick that light-skinned black man, there's a problem. Regarding the juror, the juror said that he and the officer were buddies. They were still in contact. They had been friends since childhood. Their children went to the same school. And he specifically said he really liked that officer. And that officer was a critical witness here. He was the one who tried to put together, tried to explain away various inconsistencies that were in the women's testimony. In terms of the strength of the evidence, there's so much to discuss. But Lamona, for example, when she first came to the police, she told them her assailant was a dark-complected Hispanic man with a full mustache who spoke with an accent. Mr. Clay is a light-skinned black man. There's no evidence that he's ever had a mustache. And there's no evidence that he speaks with an accent. Curiously, weeks later, she suddenly changes her testimony to a light-skinned black man. She originally said he was 5'7", and suddenly he's 6 feet tall. And she changes it to he may have had a mustache. Again, Linda, she identified him in the six-pack photo. She consistently said it was a light-skinned black man, but she was faced with six photos, only one of who was a light-skinned black man. She then went that very same day to a live lineup where Mr. Clay was the only person who was the same person from the photo ID that she had just seen. Counsel, you're over time. Any questions? I have none. All right. We thank you for your argument. All right. Thank you. All right. The matter of Clay v. Madden is submitted.
judges: TASHIMA, FORREST, Cardone